OPINION OF THE COURT
Burton B. Roberts, J.
This is an action for permanent injunctive relief and monetary damages. The plaintiff contends that the defendants operated the Hotel Ridgefield located at 255 West 92nd Street in New York City as a nuisance, specifically as a house of prostitution.
The action was brought under title 2 of article 23 of the Public Health Law and title C of chapter 16 of the Administrative Code of the City of New York (Nuisance Abatement Law).
At the nonjury trial extensive evidence was received concerning the Ridgefield and alleged prostitution activity being conducted there. This evidence showed that there was considerable prostitution activity occurring along Broadway in the West Eighties and West Nineties and that some of these apparent prostitutes were seen coming and going from the Ridgefield, sometimes with men and sometimes without men. An investigation of the hotel was commenced by the police at the urging of concerned neighborhood residents. The Public *928 Morals Division assigned a detail to specifically find evidence of prostitution at the hotel. Ultimately, the sum total of three arrests were made for prostitution within one year prior to commencement of this action. In each case the alleged solicitation took place on Broadway, some distance from the hotel. The prostitutes walked their "Johns” to the hotel where the arrests were made in the lobby. No money was paid to the room clerk nor was any registration card signed. Significantly, during the entire course of this police surveillance, no person was even arrested for, or much less convicted of, permitting or promoting prostitution.
However, more than a transient problem of prostitution was revealed by the testimony at trial. The Ridgefield is a 70-room, five-story, single-room occupancy hotel.
By definition, a single-room occupancy hotel rents a single room, typically equipped with a bed, a sink and a hot plate to a single person. Realistically, these dwellings are dumping places for the unwanted, the unfortunates and "losers” in our society. It is an indigent population comprised of a strange mix of elderly widows and widowers, alcoholics, released mental patients, and released convicts. These people have no families and few, if any, friends. They receive one or another form of public assistance for shelter which generally amounts to $5 a day. The results are as predictable as they are pathetic. Many of these hotels are hells on earth. Elderly residents are often victimized by younger residents, often ex-convicts or recently released mental patients. The residents, especially the younger ones, often engage in fights; they verbally accost passersby, using abusive and profane language; they play loud music late at night and often constitute a serious nuisance in the neighborhoods in which they are located.
The sheer concentration of single-room occupancy hotels in the upper west side exacerbates the inherent problems with these residences. About 75 to 80 single-room occupancy hotels are located on the west side of Manhattan from 59th to 110th Streets. On one two-block area on West 94th and West 95th Streets, there are 1,400 to 1,500 single-room occupancy hotel residents in eight single-room occupancy hotels. Many of these "hotels” cause problems for the police and the surrounding community. In sum, there is a justifiable resentment on the part of the upper west side community that they are bearing a disproportionate part of the burden created by these "hotels.”
*929 Many of the problems cited above have occurred in the Ridgefield. However, the action before this court is limited by statute to the narrow issue of whether the Ridgefield was operated as a house of prostitution.
Turning to this case, the defendants have raised several legal defenses. They contend that the presumptions contained in both statutes are violative of due process of law and that this action constitutes discriminatory and selective prosecution.
THE PRESUMPTION ARGUMENT
Section 2324-a of the Public Health Law states: For the purposes of this title, two or more convictions of any person or persons had, within a period of one year, for any of the offenses described in section 230.00, 230.05, 230.20, 230.25, 230.30 or 230.40 of the Penal Law arising out of conduct engaged in at the same real property consisting of a dwelling as that term is defined in subdivision 4 of section 4 of the Multiple Dwelling Law shall be presumptive evidence of conduct constituting use of the premises for purposes of prostitution.
Subdivision (a) of section C16-2.2 of the Administrative Code contains a similarly worded (although somewhat more limited) presumption.
At trial it was established that three arrests for prostitution were effected in the hotel within one year of the commencement of this action. These three arrests all led to convictions for prostitution.
Although the defendants correctly note that all the verbal solicitations to perform acts of sex occurred outside of the hotel, the court finds that the directing and accompanying of the "Johns” into the hotel to attempt to consummate the illicit sex act and exchange of money are part of the continuation of acts constituting the crime of prostitution. Thus the court rejects the defendants’ contention that no "acts” constituting the crime of prostitution occurred within the Ridgefield.
The court also rejects the defendants’ next contention that the statute is facially invalid. Inferences and presumptions are common elements in our adversarial fact-finding process. In recent years courts have considered and, in general, have approved the use of such inferences and presump *930 tions (e.g., Dunn v United States, 442 US 100; People v Lemmons, 40 NY2d 505).
It is often necessary for the trier of fact to determine the existence of an ultimate element of a complaint (here, the maintenance of a house of prostitution) — from the existence of one or more evidentiary or basic facts (here, two arrests and convictions for prostitution within one year. (E.g., Barnes v United States, 412 US 837, 843-844; Tot v United States, 319 US 463, 467; Mobile, J & K. C. R. R. Co. v Turnipseed, 219 US 35, 42.)
In civil cases, where the presumption, at the least, shifts the burden of producing evidence, its operation may totally preclude jury consideration of the ultimate issue. Although the effect of presumptions in criminal cases may be no more than that of permissible inferences, there, too, the existence of the presumption as to a particular element of the crime may force the defendant to introduce proof in rebuttal, including his own testimony, and thus force him to waive his constitutional right to remain silent. A recognition of the impact of these procedural consequences has caused the courts to review the creation and use of presumptions in light of the due process clauses of the Fifth and Fourteenth Amendments. The due process considerations present in criminal cases are not, however, generally applicable in civil cases. Certainly as long as there is a "rational connection” between the proved fact and the presumed fact there can be no serious due process considerations (Tot v United States, 319 US 463, supra; Leary v United States, 395 US 6; Turner v United States, 396 US 398).
Here, in the facts of this case, it cannot be denied that there is some minimal, rational connection between three arrests and three convictions for prostitution in a hotel and the maintaining of a house of prostitution. Thus, the claim that the statute is facially unconstitutional must be rejected.
The issue that remains, then, is whether the permissive presumption created by the statute is sufficient to operate to assign the burden of persuasion to the defendants. Although this issue has never been finally decided, there are no theoretical objections to it, and the intentions of the Legislature should be given wide latitude. (9 Wigmore, Evidence [3d ed], §§ 2490-2493; Bohlen, The Effect of Rebuttable Presumptions of Law Upon the Burden of Proof, 68 U of Pa L Rev 307.)
Certainly, there is a patent and justifiable right on the part of the State and city in controlling and eliminating houses of *931 prostitution. Likewise, it is not unreasonable to assign the burden of persuasion to those who own, operate, lease or reside in property within the City of New York. Thus the defendants’ claim that the statute unconstitutionally shifts the burden of persuasion must be rejected.
Absent constitutional issues — was the presumption properly raised? The answer to this is a qualified yes. The proof at trial showed that three arrests for prostitution and three resulting convictions for prostitution occurred within the statutorily requisite one-year time period of the commencement of this action. However, it is somewhat significant that the overt solicitations did not occur within the hotel, an area theoretically under the control of the defendants, but on Broadway, blocks away from the hotel, on a public street.
This contrasts with the testimony at trial by one of the plaintiffs witnesses, a police officer, that he himself had made 20 arrests for prostitution within a well-known Manhattan luxury hotel within a few-weeks period. This same witness described three of the best known opulent hotels in Manhattan as houses of prostitution. While this court need not determine this unusual proposition, it does find it somewhat bizarre. Leaving aside, for the moment, the Police Department view of New York’s pre-eminent hotels, the court notes that the police made arrests inside those hotels for acts allegedly committed within the premises.
In this case, by contrast, what must be considered a concerted effort against prostitution resulted in three arrests, on two occasions, for prostitution. Here, there were no arrests, let alone convictions for promoting prostitution. (Penal Law, § 230.40.) This is significant since, as Justice Baer noted in People v Morbel Realty Corp. (87 Misc 2d 989, 992), a conviction for promoting prostitution particularly demonstrates "not only presumptive evidence of the nuisance but prima facie evidence of knowledge, acquiescence, and participation by the defendants within the purview of the statute (Public Health Law, § 2324, subd 3, pars [a], [b], [c]).”
As applied to all the facts in this case, the statutory presumption is weak and is rebutted. This is not to say that acts of prostitution did not occur within the hotel — they apparently did; rather this court finds that the Ridgefield was not operated as a house of prostitution. Indeed it is uncontradicted that when the defendant Dick was apprised that there were complaints of prostitution, that there was a sharp decline in *932 apparent prostitution-related activity in the area of the hotel. (Compare People v Morbel Realty, supra, at p 992.) Moreover, the evidence is clear that (with the exception of one disputed room) this hotel was fully rented and that all the tenants were referred to the Ridgefield by the social services department at all times.
This court is by no means saying that the Ridgefield is a nice place. By any civilized standard, it is not. It is a residence of last resort, and it has received more than its fair share of undesirable tenants. It is, however, not a house of prostitution within the purview of either the Public Health Law or the New York City Charter.
The Ridgefield was and perhaps still is a blight on the neighborhood. Many of the witnesses recalled specific incidents of violence and harassment inflicted by residents of the hotel on themselves and passersby.
These witnesses, decent people and committed New Yorkers, attempted to effect some changes through the Human Resources Agency (H.R.A.). Sadly, their efforts were unavailing. The H.R.A. could not or would not make a real effort to ameliorate conditions at the hotel. Efforts directed toward the defendant Dick, the lessee of the hotel, proved equally unavailing.
Finally, in desperation these concerned neighborhood residents convinced the Corporation Counsel to initiate this action. The zeal and concern and motives of these people are laudable. Unfortunately, as indicated above, the plaintiff has not established its cause of action.
However, hopefully, this effort will not be in vain. The existence of the Ridgefield Hotel depends upon the referral of welfare clients by the H.R.A. to the Ridgefield Hotel. During the trial there was testimony that the Ridgefield was finally put on a nonreferral list only after the commencement of this action. The net result of this action appeared to be that the Ridgefield still received the same number of H.R.A. referrals, but that it received individuals who were rejected by or could not be placed in other single-room occupancy hotels. These undesirable residents merely exacerbated some of the already existing problems at the Ridgefield.
One of the lessons to be drawn here is that the courts ought not be used as a dumping ground for social agencies seeking to avoid their responsibility.
*933 If the Ridgefield is not an adequate single-room occupancy hotel, the H.R.A. should stop filling it with tenants. Quite simply, the Ridgefield Hotel cannot exist without referrals from the H.R.A. The court notes that actions speak louder than nonreferral lists.
If, as had been suggested by the court during conferences by the parties before the court, the Ridgefield provided a simple lounge with a television set and set aside space for a counselor or social worker provided by the H.R.A. and if the H.R.A. made some effort to monitor the type of persons being sent to this "hotel”, there might be some resolution of the problems facing the community, the Ridgefield and its residents. Although the powers of this court are vast, it would be improvident at this time for this court to direct that these and similar reforms at the Ridgefield and other single-room occupancy hotels be carried out. This is the primary duty of the executive branch — and particularly the agencies charged with administering these residences of last resort. Hopefully a word to the "wise” is sufficient.
The court would be remiss if it did not commend the energy and the efforts of the residents of the west side who have endeavored to improve the quality of their neighborhood. Although the defendants have prevailed in this action, this decision should be no means be interpreted as an indorsement of the hotel, its lessees and its managers. The Ridgefield is, or at least was, an ulcerous sore on the surrounding community and it must be made to conform to a reasonable standard— both for its residents and its neighbors.
Finally, the court wishes to dispose of the defendants’ claims of discriminatory enforcement of the ordinance against them. While it is true that intentional or purposeful discrimination in the administration of an otherwise nondiscriminatory law violates equal protection (Yick Wo v Hopkins, 118 US 356; People v Friedman, 302 NY 75; People v Utica Daw’s Drug Co., 116 AD2d 12), it must be borne in mind that one who alleges discriminatory enforcement must meet the "heavy burden” of showing "conscious, intentional discrimination” (People v Utica Daw’s Drug Co., 16 AD2d, at p 19), or a consciously practiced pattern of discrimination (People v Friedman, 302 NY 75, supra). The conscious exercise of some selectivity in enforcement of the law is not in itself a constitutional violation (Oyler v Boles, 368 US 448; Matter of Di Maggio v Brown, 19 NY2d 283; People v Goodman, 31 NY2d *934 262, 268). It is sufficient to note that the defendant has completely failed to meet the heavy burden of proof to substantiate this claim.
The court wishes to commend Assistant Corporation Counsel Ira Blankstein, Esq., counsel for the plaintiff, and David Ettinger, Esq., counsel for the defendants, for the professional manner in which they presented the issues to this court.
In view of all the foregoing, the court finds for the defendants and denies injunctive relief and monetary damages.