OPINION OF THE COURT
Richard S. Lane, J.
In this action the city seeks a permanent injunction closing defendants’ premises on the ground floor of 509 West 34th Street doing business as "Plato’s Retreat”, and moves for a preliminary injunction granting the same relief. The city asserts that Plato’s Retreat is a place where prostitution takes place and is operating without a certificate of occupancy, and is thus a public nuisance under Administrative Code of the City of New York § C16-2.0 et seq. (Nuisance Abatement Law) *921 and Public Health Law § 2324 et seq. The city also cites Administrative Code § C26-85.5 (judicial remedies) as further authority for a closing order.
Defendants vigorously deny the prostitution rap and assert that, in any event, an order closing Plato’s Retreat would be unconstitutional as an impermissible prior restraint on activities protected by US Constitution 1st Amendment and NY Constitution, article I, § 8. On the same basis and on the additional constitutional basis of intrusion on the right of privacy, defendants cross-move to dismiss the first two causes of action in the city’s complaint relating to prostitution.
Defendants concede that Plato’s Retreat has no current certificate of occupancy. As a mitigating factor, however, they point to several temporary certificates and a nine-year-old game of pingpong between Plato’s Retreat, the Department of Buildings and the Board of Standards and Appeals over proper classification, and they have recommenced efforts to obtain a certificate. They assert the same constitutional argument of impermissible prior restraint as a bar to a closing order on this ground as well, and they urge a less restrictive alternative.
The order to show cause commencing this action and bringing on this motion contained a temporary restraining order closing Plato’s Retreat. On the hearing on November 27, 1985, I continued the temporary restraining order pending determination of the motion. On appeal, however, it was vacated by the Appellate Division on December 6, 1985 and Plato’s Retreat reopened. I am informed that, on or about December 30, 1985 on an amended complaint and additional affidavits, the city has obtained a second temporary restraining order closing Plato’s Retreat and has made a further motion for a preliminary injunction. These matters, however, are not before me at this time.
Plato’s Retreat opened its doors some nine years ago as the first so-called "swingers’ club” dedicated to the philosophy that couples will be healthier and closer if they engage together in open recreational sexual activity with nonmarital partners. This swinging life-style allegedly spread rapidly across the country and indeed the world until now the clubs are so numerous that they hold annual conventions in Chicago and California.
Physically the facilities at Plato’s Retreat consist of a pool, hot tub, Jacuzzi, sauna, exercise room, game room, dance floor, *922 buffet area, restrooms and locker rooms. Behind the locker rooms are small cubicles called "party” rooms. Sexually oriented movies are regularly available and frequently there are strip tease shows, nude dancing, and other exhibitions. Patrons may disrobe or not as they choose. Plato’s Retreat designates itself as a membership club, but anyone who signs an application at the door and pays the appropriate fee can gain admission. Once inside, all facilities including food and drink (no alcohol) are free.
Initially, Plato’s Retreat was open only to couples and unescorted females. For several years now, however, three nights a week are singles nights for men and unescorted females are admitted free.
As to the use of its facilities by prostitutes, "Absurd” say defendants. Why would a prostitute ply her trade here where all around her sex is available for free? In order to guard against the risk of prostitutes, however, certain precautions are allegedly taken: (1) a security guard at the door — often the proprietor, Mr. Levinson himself — instructed to deny admission to anyone suspected of being a prostitute; (2) a security guard in the locker rooms instructed to detain and question anyone returning to the locker rooms to ascertain if the purpose was to retrieve money; (3) four employees constantly circulating the premises to monitor activities and watch for any exchange of money; (4) a membership application and card which specifically forbids prostitution; and (5) a constant message beamed in-house and in the appropriate media that prostitutes are not welcome.
To this Plato’s Retreat on November 4, 1985 came two inspectors from the Department of Consumer Affairs who were looking for "dangerous sex” (anal or fellatio) as defined in the new emergency regulations promulgated by the Public Health Council with the approval of the State Commissioner of Health in response to the AIDS scare (10 NYCRR 24.2). They found none but were allegedly solicited for sex for money. Following them on November 12 and 18, 1985 came four police officers from the Morals Squad who made four arrests for prostitution. Later in the month a senior investigator with the Mayor’s Office of Midtown Enforcement communicated with an escort service and was allegedly advised that girls were available to accompany him to Plato’s for two hours and to engage in sex with him there for $200. To support the allegation of the common fame and reputation of Plato’s as a *923 place where prostitution takes place, the city adds certain advertisements and articles in Screw and New York Action.
One of the four arrests for prostitution has already resulted in a plea of guilty and conviction. The other three arrested are apparently asserting their innocence which, as anyone familiar with arraignment parts knows, is quite rare in prostitution cases. Their cases are still pending. Of the three, two have no records, and the third, a transvestite, has only a short record. The proprietor, Mr. Levinson, was allegedly an eyewitness to the arrests of these three, and he flatly contradicts the police officers with respect to the circumstances of the arrests. Defendants also offer the affidavit of one Arlene Carmen, a church program associate who specializes in working with prostitutes, to combat the allegation of the common fame and reputation of Plato’s.
None of the presumptions of the existence of the nuisance of prostitution contained in Administrative Code § C16-2.2 (a) and Public Health Law § 2324 (3) (b) and § 2324-a have been triggered by the city’s evidence. Nor can it be said, pursuant to Administrative Code § C16-2.2 (a) and Public Health Law § 2324 (3) (c) that there is prima facie evidence of the existence of the nuisance and the knowledge, acquiescence and participation of the owners, lessors, lessees and operators of the premises. These, however, are primarily evidentiary issues for a Trial Judge, and their absence does not necessarily doom the motion for a preliminary closing injunction. Nor on the other hand would the establishment of presumptions and/or prima facie evidence necessarily result in the granting of the motion (People v Macbeth Realty Co., 63 AD2d 908 [on motion]; People ex rel. City of New York v Macbeth Realty Co., 100 Misc 2d 926 [on trial]; People v Morbel Realty Corp., 87 Misc 2d 989).
As in all other motions for a preliminary injunction, the determining factors are: (a) likelihood of success; (b) irreparable injury; and (c) balancing of the equities. I have no trouble finding the last two elements of the trilogy. If prostitution goes on at Plato’s Retreat in violation of law, its continuation is a boil on the body public which should be lanced and the sooner the better. The real difficulty for me is whether the city’s evidence is strong enough to predict its eventual success on trial.
One incident of prostitution has been established. An isolated incident is, of course, not enough. As Chief Judge Wacht *924 ler said in People ex rei. Arcara v Cloud Books (65 NY2d 324, cert granted — US —, 106 S Ct 379 [Nov. 12, 1985]): "Rather, we agree with the Appellate Division that 'the People will have to show a consistent pattern of conduct sufficient to prove that the premises are being employed for a proscribed use.’ (101 AD2d, at p 168.) The most significant factors in making this factual determination will be the frequency of the conduct, the knowledge or even encouragement by the defendant of its existence, and the extent of the benefit, direct or indirect, derived by defendant from such activity.” (65 NY2d 324, 331, supra.) Further, following Chief Judge Wachtler’s analysis, just as in the Arcara case (supra), it was irrelevant that defendant was an "adult” bookstore featuring sexually explicit material, so it is irrelevant here that Plato’s Retreat is in the business of promoting open sex between consenting nonmarital partners. Sex for pay must be shown.
In light of this standard promulgated only a few months ago by our highest court in a substantially identical kind of case, I have come to the conclusion that the city has failed to show enough to establish that it will probably prevail on trial. The conviction of Ms. Green aside, everything before me is hotly disputed. The case therefore is clearly distinguishable from the multiple unreported Special Term opinions attached to the city’s papers.
Perhaps I could order an evidentiary hearing on the disputed questions of fact. In my opinion, however, it would not be an economic use of judicial resources since, under the circumstances, it would upstage any trial to follow.
Turning now to the lack of a certificate of occupancy, it is conceded factually. Defendants contend that Plato’s Retreat is a noncommercial club. The Department of Buildings contends somewhat ingenuously that it is a physical culture and health establishment which requires a special permit from the Board of Standards and Appeals. There is a lengthy dispute in the papers as to the proper allocation of blame for what I have called the "pingpong game” between defendants and the various responsible city agencies and which has resulted in a stalemate. It is all beside the point. Waiver or estoppel does not lie against a municipality. The bottom line is that there is no valid certificate of occupancy for Plato’s Retreat as it is currently being operated, and defendants for over a year have taken no steps to remedy this situation.
Public Health Law § 2320 et seq. does not reach this nui *925 sanee. Administrative Code § C16-2.0 et seq. does reach it, but authorizes a closing order only upon clear and convincing evidence that public health, safety or welfare is endangered. No such showing has been made or even attempted. Administrative Code § C26-85.5, on the other hand, contains no such limiting language.
Accordingly, the thorny constitutional issue of impermissible prior restraint on 1st Amendment protected activities, which I escaped factually with respect to the prostitution charges, now squarely faces me.
The nude dancing and other exhibitions conducted at Plato’s Retreat are concededly protected by the 1st Amendment. The city has derided these exhibitions as the tail wagging the dog. Chief Judge Wachtler, in the Arcara case (supra), however, expressly rejected the "primary purpose” test. One cannot override 1st Amendment rights simply as a matter of degree. Furthermore, the city conveniently overlooks the claim that the central activity of Plato’s Retreat is also protected under the 1st Amendment’s protection of the right of free association. If this right extended only to debating societies as argued by the city, it would be a thin reed indeed. South Fla. Free Beaches v City of Miami (734 F2d 608), cited by the city, is not to the contrary. There the issue was not the right to gather for the purpose of nude sun bathing, but rather the right to use public property for that purpose. Where private property was used, nude sun bathing was protected (Roberts v Clement, 252 F Supp 835). As the Eastern District of Tennessee said in that case: "Attached to [the] freedom of association is also the freedom of action which utilizes the beliefs and ideas for the assemblies, if such action is compatible with the freedom of others.” (Roberts v Clement, supra, at p 849 [concurring opn, Darr, J.].)
There is no doubt, therefore, that a closing order would substantially curtail the exercise of 1st Amendment rights. Even 1st Amendment protected activities, however, must comply with valid land use laws and regulations if narrowly enough drawn (Young v American Mini Theatres, 427 US 50; see, Schad v Mount Ephraim, 452 US 61). In the Schad case the municipality argued, as does the city here, that a closing order would be compatible with the 1st Amendment because there were many nearby places where nude dancing was available. The Supreme Court answered with a ringing quotation from its decision in Schneider v State (308 US 147, 163) " '[and] one is not to have the exercise of his liberty of *926 expression in appropriate places abridged on the plea that it can be exercised in some other place.’ ” (Schad v Mount Ephraim, supra, at pp 76-77.) Is Administrative Code § C2685.5 narrowly enough drawn?
Again my model is Chief Judge Wachtler in the Arcara case (65 NY2d 324, 335-336, supra) who, in turn, adopted the four-pronged test in United States v O’Brien (391 US 367, 377). A law aimed at "nonspeech” elements but having an incidental effect on protected expression is justified if: (a) it is within the constitutional powers of government; (b) it furthers an important governmental interest; (c) the important governmental interest is unrelated to the suppression of free expression; and (d) the incidental restriction on alleged 1st Amendment freedoms is no greater than is essential to the furtherance of that interest.
A closing order here would certainly meet the first three O’Brien tests, but just as certainly it would not meet the fourth. An order to defendants to expeditiously pursue all administrative and judicial remedies to resolve its certificate of occupancy problems would suffice. This is not judicial license to operate without a certificate of occupancy as argued by the city. It is rather accommodating the law to the higher command of the Constitution. The Appellate Division must have seen it this way too.
I am not ignoring the possibility that Plato’s Retreat as presently operated may not eventually succeed in obtaining a valid certificate of occupancy. A trial herein, however, will certainly have intervened, and another Judge will have the responsibility for carefully crafting any relief to be granted.
Turning finally to defendants’ cross motion to dismiss the city’s first and second causes of action pertaining to the alleged nuisance of prostitution, defendants argue that I have no option but to grant the motion under the Arcara case (supra), and its four-pronged O’Brien test. And, indeed, the Court of Appeals in the Arcara case did grant partial summary judgment dismissing so much of a similar cause of action brought by the District Attorney of Erie County as sought a closing order.
Why not the same result here? The answer is simply that the two cases are factually distinguishable. In the Arcara case the main business of selling books and magazines could easily be segregated from backroom illegal sexual activity. Here, however, by reason of the fact that Plato’s Retreat’s main *927 business is sexual activity, the segregation of illegal sexual activity would be virtually impossible. Defendants have tried, the city claims, and have failed. At the original hearing, I suggested the possibility of an order enjoining prostitution and closing down of only singles nights when allegedly "they loaded the place with hookers”. The trouble would be, however, that escort services would make even such a limited order difficult to enforce. The city would have to flood the place with officers.
In other words, if the city succeeds on trial here in establishing that Plato’s Retreat is a place where prostitution takes place, a closing order under the circumstances might well survive the fourth O’Brien test.
Defendants also seek to justify dismissal under the constitutional right of privacy citing People v Onofre (51 NY2d 476). Even if defendants could get by the almost unquestioned right to regulate sex for pay (but see, Cherry v Koch, NYLJ, Oct. 24, 1984, p 13, col 3), the simple answer is that there is nothing private about Plato’s Retreat. Defendants’ position would allow the penumbra of privacy to creep over any place where there is a front door to shut.
Accordingly, the city’s motion for a preliminary injunction closing Plato’s Retreat as a place where prostitution takes place is denied. The city’s motion for a preliminary injunction closing Plato’s Retreat as a place without a valid certificate of occupancy is denied without prejudice to renewal if defendants fail to expeditiously and vigorously pursue their administrative and judicial remedies to obtain a valid certificate of occupancy. Defendants’ cross motion to dismiss is denied.
An early trial is directed.