MICHIGAN *ex rel* WAYNE COUNTY PROSECUTOR v BENNIS

Docket No. 97339. Argued October 5, 1994 (Calendar No. 5). Decided December 30, 1994. Certiorari granted by the Supreme Court of the United States on June 5, 1995, 515 US — (1995).

The Wayne County Prosecutor brought an abatement action in the Wayne Circuit Court, contending that a vehicle owned by John C. and Tina Bennis, used in an act of prostitution involving John Bennis, was a public nuisance under MCL 600.3801; MSA 27A.3801. Tina Bennis claimed she did not know that the vehicle had been used in violation of the statute and, thus, that her interest could not be abated. The court, Michael J. Talbot, J., held that the vehicle was a nuisance and abated the interest of the defendants. The Court of Appeals, MURPHY and MARILYN J. KELLY, JJ. (JANSEN, P.J., dissenting), reversed, holding that under *People v Schoonmaker,* 241 Mich 177 (1927), the prosecution failed to prove that Tina Bennis knew the defendant used the vehicle in a manner proscribed by the statute; that it failed to demonstrate that an act of lewdness, assignation, or prostitution occurred; and that proof of a single incident of lewdness, assignation, or prostitution is insufficient to establish a nuisance (Docket No. 132568). The people appeal.

In an opinion by Justice RILEY, joined by Justices BOYLE and MALLETT, with Justice GRIFFIN concurring only in the result, the Supreme Court reversed the decision of the Court of Appeals.

Justice RILEY, joined by Justices BOYLE and MALLETT, stated that lewdness, incidental to an act of prostitution, is activity squarely within the purview of the nuisance abatement statute. Proof of an exchange of money is not necessary where it is clear from the totality of circumstances that the sexual act was in exchange for payment. In this case, the abatement of the vehicle was proper. The defendant entered a neighborhood known for prostitution and used his vehicle to engage in illicit activity, thereby contributing to an existing nuisance. Under the nuisance abatement statute, knowledge or consent is not required to abate the interest of a co-owner.

The nuisance abatement statute requires that the act committed be one of lewdness, assignation, or prostitution. Conduct constituting lewdness or assignation is limited to those in-

stances in which an act occurs in furtherance or for the purpose of prostitution. In this case, the defendant's conduct constitutes lewdness because it occurred in a residential neighborhood and was in furtherance of an act of prostitution. He engaged in the act with a known prostitute in an area reputed for illicit activity, and, while no exchange of money was witnessed, from the totality of the circumstances, a clear inference may be drawn that the sexual act was committed in exchange for monetary compensation. Thus, proof of an actual exchange of money is not required.

MCL 600.3801; MSA 27A.3801 provides for the abatement of a vehicle used for the purpose of lewdness, assignation, or prostitution. A public nuisance has been held to exist where an act offends public decency and involves a continuing detrimental effect on the public. Evidence of the general reputation of a place is admissible for the purpose of proving the existence of a nuisance. This case involves a condition that, on the basis of the record, is a public nuisance in the neighborhood at issue. Vehicles that enter the neighborhood to solicit acts of prostitution are being used for the continuance of this nuisance. The one act of nuisance by the defendant in his vehicle must be viewed in light of the larger and continuing nuisance occurring in the neighborhood. Where testimony surrounding the proof of an incident of prostitution unequivocally establishes that the neighborhood has a reputation for prostitution, the property contributing to the continuance of the nuisance may be abated.

In light of the plain language of the nuisance abatement statute and decisions of the Michigan Supreme Court that have applied it, a co-owner need not consent to or acquiesce in the illegal use of property in order for abatement to be ordered. The statute does not violate the constitution. The trial judge did not abuse his discretion in fashioning an appropriate remedy, abating the vehicle.

Chief Justice CAVANAGH, joined by Justices LEVIN and BRICKLEY, dissenting, stated that the condition of the neighborhood in this case is not the public nuisance. Further, a single act of prohibited conduct is insufficient to support abatement without evidence that the conduct is habitual or continuing. Public nuisances, by their nature, imply a continuing condition. The statute is aimed at property that has become so associated with an activity that it has become part of the activity. In this case, the vehicle abated was only a convenient site for the activity, and the activity was insufficient to subject the vehicle to abatement under the statute.

Justice LEVIN, dissenting, stated that a vehicle is not subject

to a nuisance abatement action unless the person owning or in lawful possession of it is engaged in and uses it in the conduct of illicit activity, described in the statute, as a business.

The general reputation of a place may be considered for the purpose of showing that the place is a nuisance, and of a vehicle for the purpose of showing that the vehicle is a nuisance. But the general reputation of a place where the vehicle is driven or used, under the statutory provision for use of general reputation evidence, may not be relied on for the purpose of showing that the vehicle is a nuisance.

Unless a vehicle itself is a nuisance, it is not subject to abatement, and it is not within the intendment of the statute. Unless a place itself is a nuisance, i.e., a place used for the purpose of prostitution, or used by or kept for the use of prostitutes, it is not subject to abatement, and it is not within the intendment of the statute. The Legislature clearly did not intend that an entire residential neighborhood where prostitutes roam, as a place, was subject to abatement.

The statutory provision that the prosecutor is not required to offer proof of knowledge of the existence of the nuisance on the part of the defendants or any of them does not make an owner's lack of knowledge immaterial or irrelevant regarding whether property that is subject to abatement as a nuisance should be forfeited. As a matter of statutory construction, an innocent co-owner's share of a vehicle should not be subject to forfeiture.

200 Mich App 670; 504 NW2d 731 (1993) reversed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *George E. Ward,* Chief Assistant Prosecuting Attorney, *Andrea Solak,* Chief, Special Operations, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the plaintiff.

ACLU Fund of Michigan (by *Paul J. Denenfeld*) for the defendants.

RILEY, J. In this case, we are required to construe various aspects of the nuisance abatement

statute, MCL 600.3801; MSA 27A.3801.[1] Specifically, we must decide whether an act of prostitution was consummated absent proof that money was exchanged. Next, we must determine whether the trial court erred in abating a vehicle used to commit an act of prostitution in a neighborhood with a reputation for illicit activity. Finally, we must consider whether a co-owner's interest in a vehicle may be abated where the co-owner allegedly had no knowledge that the vehicle was used in proscription of the statute.

We would hold that lewdness, incidental to an act of prostitution, is activity squarely within the purview of the nuisance abatement statute. Alternatively, we conclude that proof of an exchange of money is not necessary where, as here, it is clear from the totality of circumstances that the sexual act was in exchange for payment. Additionally, we would uphold the abatement of this vehicle because the defendant entered a neighborhood that is a known place for prostitution and used his vehicle to engage in illicit activity, thereby contributing to the existing nuisance. Finally, pursu-

---

[1] Any building, vehicle, boat, aircraft, or place used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons, or used for the unlawful manufacture, transporting, sale, keeping for sale, bartering, or furnishing of any controlled substance as defined in section 7104 of the public health code, Act No. 368 of the Public Acts of 1978, being section 333.7104 of the Michigan Compiled Laws, or of any vinous, malt, brewed, fermented, spirituous, or intoxicating liquors or any mixed liquors or beverages, any part of which is intoxicating, is declared a nuisance, and the furniture, fixtures, and contents of the building, vehicle, boat, aircraft, or place and all intoxicating liquors therein are also declared a nuisance, and all controlled substances and nuisances shall be enjoined and abated as provided in this act and as provided in the court rules. Any person or his or her servant, agent, or employee who owns, leases, conducts, or maintains any building, vehicle, or place used for any of the purposes or acts set forth in this section is guilty of a nuisance.

ant to the clear and unambiguous language of the statute, we would hold that knowledge or consent is not required to abate the interest of a co-owner.

I

John Bennis was arrested for gross indecency on the evening of October 3, 1988. On that evening, Detroit police officers Jacob Anthony and John Howe set up surveillance after they witnessed a woman "flagging"[2] passing vehicles on the corner of Eight Mile and Sheffield. The woman was later identified as Kathy Polarchio. The officers next observed a 1977 Pontiac, driven by a man, later identified as John Bennis, turn onto Sheffield and stop near Ms. Polarchio, who approached and entered the passenger side of the Pontiac. The officers followed the Bennis vehicle, which proceeded a block, made a U-turn, and stopped. Surveillance continued until the officers noticed Ms. Polarchio's head disappear toward the driver's side of the Pontiac. The officers immediately approached the Bennis vehicle, shined a flashlight into the front seat, and witnessed Ms. Polarchio performing an act of fellatio on Mr. Bennis.

Mr. Bennis was convicted of gross indecency in violation of MCL 750.338b; MSA 28.570(2).[3] The Wayne County prosecutor then filed a complaint alleging that the Bennis vehicle was a public nuisance subject to abatement pursuant to MCL 600.3801; MSA 27A.3801. The vehicle was co-owned by Mr. Bennis' wife, Tina Bennis, who claimed that she had no knowledge that her hus-

---

[2] "Flagging" is the manner in which prostitutes solicit business from potential customers in passing vehicles.

[3] Ms. Polarchio was arrested the next day for accosting and soliciting. She had formerly been arrested on several occasions for disorderly conduct, accosting and soliciting, and indecent and obscene conduct.

band ever used their vehicle in violation of the statute. The trial judge held that the vehicle was a nuisance and abated the interest of defendant and his wife.

The Court of Appeals reversed the decision of the trial court,[4] holding first that the prosecution had an obligation under *People v Schoonmaker,* 241 Mich 177; 216 NW 456 (1927), to demonstrate that Mr. Bennis' wife knew that he used the vehicle in a manner proscribed by the statute and failed to offer such proof.[5] The Court of Appeals next held that under *State ex rel Oakland Co Prosecutor v Motorama Motel Corp,* 105 Mich App 224; 307 NW2d 349 (1981), proof of a single incident of lewdness, assignation, or prostitution is insufficient to establish a nuisance. Finally, the Court of Appeals held that the prosecution failed to demonstrate that an act of lewdness, assignation, or prostitution occurred.

We granted leave to appeal[6] and now reverse the decision of the Court of Appeals.

II

We turn first to whether the act committed in the Bennis vehicle is within the purview of the nuisance abatement statute. Consistent with the 1909 Iowa "red light abatement acts," upon which the Michigan statute is based,[7] the Michigan statute requires that the act be one of "lewdness, assignation *or* prostitution."[8] In *State ex rel*          .

---

[4] 200 Mich App 670; 504 NW2d 731 (1993).

[5] *Schoonmaker* was based on a predecessor statute, 1925 PA 389; however, the relevant language is virtually identical to the present statute. See n 26.

[6] 445 Mich 862 (1994).

[7] *State ex rel Wayne Co Prosecutor v Diversified Theatrical Corp,* 396 Mich 244, 246; 240 NW2d 460 (1976).

[8] See n 1 (emphasis added).

*Wayne Co Prosecuting Attorney v Levenburg,* 406 Mich 455; 280 NW2d 810 (1979), this Court used the rule of construction, *noscitur a sociis,* to define assignation in the statute.[9] The Court upheld the abatement of a bar because it was used for accosting and soliciting acts of prostitution. In other words, "the making of an appointment for the purpose of prostitution" constituted assignation under the statute. *Id.* at 466. *Levenburg* based its decision on *State ex rel Wayne Co Prosecutor v Diversified Theatrical Corp,* 396 Mich 244, 246-250; 240 NW2d 460 (1976). *Diversified* essentially held that while lewdness, assignation, and prostitution are set forth in the alternative, the conduct constituting lewdness or assignation must be incidental to or in furtherance of an act of prostitution.[10]

In the instant case, the prosecution maintains that an act of lewdness, within the context of the nuisance abatement statute, occurred. Although this aspect of the statute has yet to be defined,[11] we

[9] The doctrine should be applied where legislative intent is not clear, so that "when two or more words are grouped together, and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the special word." 2A Singer, Sutherland Statutory Construction (5th ed), § 47.16, p 183. See also *Williams & Works, Inc v Springfield Corp,* 408 Mich 732, 746; 293 NW2d 304 (1980).

[10] *Diversified* relied on *State v Morley,* 63 NM 267, 270-271; 317 P2d 317 (1957), which stated "we are led to believe that the legislature intended 'lewdness' to be limited to acts in connection with 'assignation' or 'prostitution' " and further noted that "[t]he term 'lewdness' is a broader and more general term than 'assignation' or 'prostitution.' " See also *State ex rel Oakland Prosecuting Attorney v Ginell,* 159 Mich App 679, 681; 407 NW2d 59 (1987), in which the Court of Appeals held that the activity must not be consensual in nature, whether lewd, obscene, or disorderly; *State ex rel Wayne Co Prosecuting Attorney v Dizzy Duck,* 203 Mich App 250, 260; 511 NW2d 907 (1994), where the Court of Appeals concluded that lewdness "as used in the nuisance abatement statute, refers to those sexual acts . . . performed on another where done for hire."

[11] In *Diversified,* we did not define lewdness, but simply held that no interest was abatable because the conduct was unrelated to live acts of prostitution on the premises.

agree with the contention put forth by the prosecution.

We analogize the definition of "assignation" in *Levenburg* with the definition we now give to "lewdness." *Levenburg* looked to the common meaning of "assignation" and concluded that the common definition of the term is limited to those instances in which the act of assignation is "for the purpose of prostitution." *Id.* at 466. In this manner, the common definition of "lewdness" includes a lustful and obscene display of illicit sexual activity.[12] Utilizing the common meaning of "lewdness,"[13] we also conclude that it is limited to those instances in which an act of lewdness occurs in furtherance of or for the purpose of prostitution.

This result is consistent with Michigan decisions in *Diversified* and *Levenburg, supra,* as well as other jurisdictions interpreting similar language.[14] For example, in *Pennsylvania v MacDonald,* 464 Pa 435, 460-461; 347 A2d 290 (1975), the court addressed the issue of lewdness and concluded:

[12] See also 50 Am Jur 2d, Lewdness, Indecency, and Obscenity, § 1, pp 450-451:

> Lewdness has been defined as the unlawful indulgence of lust. It signifies that form of immorality which has relation to sexual impurity, and is generally used to indicate gross indecency with respect to the sexual relations. Illicit intercourse may under some circumstances constitute lewdness, but there may also be lewdness without any such act.

[13] The *Random House College Dictionary of the English Language: Unabridged Edition* defines "lewd" as:

> 1. inclined to, characterized by, or inciting to lust or lechery; lascivious. 2. obscene or indecent, as language or songs; salacious. 3. Obs. a. low, ignorant, or vulgar. b. base, vile, or wicked, esp. of a person. c. bad, worthless or poor, esp. of a thing.

[14] See *Levenburg* and *Diversified* and cases cited therein.

> Far more important than mere dictionary defini-
> tions is the statutory context in which the word
> "lewdness" appears. . . . That context proscribes
> use of any building "for the purpose of fornication,
> . . . assignation, and/or prostitution." All of these
> forbidden purposes involve illicit sexual *conduct,*
> thus strongly indicating a legislative intention to
> proscribe only purposes of this type when it used
> the word "lewdness." Such a construction has the
> further advantage of obviating any problems of
> vagueness which might be entailed by construing
> the term "lewdness" in a broader fashion. [Empha-
> sis supplied.]

In the case at bar, Mr. Bennis' conduct consti-
tutes lewdness because it occurred in a residential
neighborhood and was in furtherance of an act
that traditionally forms the basis of a prostitution
charge, i.e., fellatio.[15] This result is consistent with
the definition of assignation in *Levenburg, supra*
at 466. Indeed, we find particularly persuasive the
fact that Mr. Bennis engaged in this act with a
known prostitute in an area reputed for illicit
activity.[16] Therefore, while no money was ex-
changed, the conduct clearly satisfies statutory
requirements and is subject to abatement.

Moreover, even if we did not find the conduct
lewd within the meaning of the nuisance abate-
ment statute, we are persuaded that from the
totality of the circumstances, an act of prostitution
occurred. We primarily rely on the uncontroverted
testimony of Detroit police officer Jacob Anthony
who, along with his partner, witnessed Ms. Polar-

[15] We do not decide whether property may be abated for an act of
lewdness where the conduct is not that which traditionally forms a
charge of prostitution.

[16] The record is devoid of any evidence that Mr. Bennis raised in his
defense that this activity was consensual or that he and Ms. Polarchio
had some prior relationship.

chio "flagging"[17] passing vehicles on Eight Mile and Sheffield. His testimony is a compelling indication that an act of prostitution occurred. As previously stated, the officers witnessed the Bennis vehicle stop in response to Ms. Polarchio's "flagging" and saw her enter the vehicle posthaste. The vehicle proceeded and within minutes again came to a stop. Ms. Polarchio's head immediately disappeared, and the officers then observed the two engaged in fellatio. The dissent fails to address this most persuasive testimony.

We are additionally persuaded by the following facts which support our conclusion. One witness, Sammie Parham, a security guard at a business located at Six Mile and Woodward, testified that he had seen Mr. Bennis in the area during the summer before Bennis' October 3, 1988, arrest. Mr. Parham saw Mr. Bennis talking to a prostitute on two separate occasions and ushered the prostitutes away in both instances just as they were about to enter the Bennis vehicle.

Furthermore, it is uncontested that Ms. Polarchio had been arrested several times for solicitation and disorderly conduct. The arresting officer testified that Mr. Bennis stopped at the waving, or what he perceived to be the "flagging," by Ms. Polarchio. Additionally, we are persuaded by Mr. Bennis' admission at trial that he normally proceeds home across Eight Mile and turns north onto Woodward. It is uncontested that on the evening in question, Mr. Bennis drove down Eight Mile and proceeded *south* on Sheffield, the opposite direction of his home. It is also undisputed that minutes after he turned onto Sheffield and picked up Ms. Polarchio, two officers found them engaged in fellatio.

[17] See n 2.

While the officers did not actually witness an exchange of money, from the testimony elicited at trial, a clear inference may be drawn that the sexual act was in exchange for monetary compensation. In his defense, Mr. Bennis has not asserted that he and Ms. Polarchio had a relationship or even knew one another, precluding any inference that the act was consensual, rather than for hire. We do not shift the burden of proof to defendant on this issue. We clearly have sufficient testimony on the record which supports that an act of prostitution occurred. We merely find it noteworthy that, as a matter of fact, Mr. Bennis has not asserted in his defense that there was a prior or existing relationship between himself and Ms. Polarchio.

In sum, we are persuaded by the testimony of the officer witnessing the act and the stated additional facts that augment our decision. Under these circumstances, proof of an actual exchange of money is not required. An action will not be denied merely because the witnessing officers do not allow the illicit activity to proceed to the point where money is exchanged. We therefore conclude that the Court of Appeals erred in holding that the prosecution failed to demonstrate that an act of lewdness, assignation, or prostitution occurred in the Bennis vehicle.

III

As noted above, MCL 600.3801; MSA 27A.3801 provides for the abatement of a vehicle used for the purpose of lewdness, assignation, or prostitution. However, the statute does not define the extent of activity required to constitute a nuisance. Therefore, we must next determine whether *an* act of prostitution committed in a neighborhood

known for illicit activity is within the purview of
the statute.

### A

Although the issue has not been resolved by
appellate decisions of this state, an attempt was
made to clarify the definition of nuisance in *Moto-
rama Motel, supra.* Citing *People ex rel Wayne
Prosecuting Attorney v Bitonti,* 306 Mich 115; 10
NW2d 329 (1943), *Motorama* held that "[a] nui-
sance involves the notion of repeated or continuing
conduct and should not be based upon proof of a
single isolated incident unless the facts surround-
ing that incident permit the reasonable inference
that the prohibited conduct was habitual in na-
ture." *Id.* at 229-230. However, *Motorama's* reli-
ance on *Bitonti* is belied by the fact that only four
of the eight justices in *Bitonti* held that a single
act was sufficient to constitute an abatable nui-
sance.[18]

As a result, existing Michigan precedent does
not specifically require more than a single incident
of conduct. However, cognizant of the activity that
has implicitly constituted a nuisance in previous
actions,[19] we must determine whether the activity

---

[18] Four justices held that a single act was sufficient, three held it
was not, and one concurred in the reversal of the abatement but
"without expressing the opinion that proof of a single violation would
be insufficient to establish the existence of a nuisance under all
circumstances." *Id.* at 120.

[19] We acknowledge that many abatement cases in this state based
on identical predecessor statutes involved a nuisance where more
than a single act of conduct was proved or could be inferred. *People
ex rel Wayne Prosecuting Attorney v Sill,* 310 Mich 570, 572; 17
NW2d 756 (1945), abated the interest of a vehicle where proof was
submitted that the owner was engaged in the "numbers racket" and
had in his possession a number of betting slips. *State ex rel Wayne
Prosecuting Attorney v Martin,* 314 Mich 317, 322; 22 NW2d 381
(1946), held that "[t]he testimony of defendant would of itself be a
sufficient basis for the court's finding that defendant had used the

in this case properly falls within the definition of nuisance as used in MCL 600.3801; MSA 27A.3801.

B

Because the public nuisance statute allows the abatement of property used in a proscribed manner without specifying the activity that will constitute a nuisance, we are aided in the definition of a nuisance by general public nuisance law. This Court has defined a public nuisance as involving "not only a defect, but threatening or impending danger to the public . . . ." *Kilts v Kent Co Bd of Supervisors,* 162 Mich 646, 651; 127 NW 821 (1910). Similarly, this Court has declared a public nuisance where an act "offends public decency." *Bloss v Paris Twp,* 380 Mich 466, 470; 157 NW2d 260 (1968).[20] Finally, *Garfield Twp v Young,* 348 Mich 337, 342; 82 NW2d 876 (1957), held that to constitute a nuisance

the activity must be harmful to the public health, or create an interference in the use of a way of

automobile in question on the very day of his arrest and the preceding day for the illegal purposes [gambling] claimed by plaintiff " and therefore was abatable pursuant to the nuisance abatement statute. *Levenburg, supra* at 466-467, upheld the abatement of a Detroit bar where there was testimony that prostitutes frequently solicited customers to perform sexual acts elsewhere. In *State ex rel Macomb Co Prosecuting Attorney v Mesk,* 123 Mich App 111, 123; 333 NW2d 184 (1983), the Court relied on *Motorama,* requiring that the prosecution establish that the nuisance was continuing in nature. A continuing nuisance was established where four undercover police officers made separate visits to a massage parlor over a nine-month period and each time a model agreed to perform sexual services.

[20] In *Bloss, supra,* this Court upheld the lower court's injunction of the operation of an outdoor theater showing explicit movies where neighborhood children could view the films from outside the drive-in. *Id.* at 468-469. The Court held: "It is our judgment that the foisting off of a display of pictures not fit for children to see onto places within their view on public streets, on residential properties and in private homes, without the consent of the property owners and the parents, is a public nuisance." *Id.* at 470.

travel, or affect public morals, or prevent the
public from the peaceful use of their land and the
public streets. [Citations omitted.]

The rationale is that a nuisance involves a contin-
uing detrimental effect on the public. The nuisance
abatement statute serves the same general pur-
pose. Therefore, mindful of the activity that gener-
ally constitutes a public nuisance, we apply these
principles to the context of the nuisance abate-
ment statute.

C

In construing the nuisance abatement statute,
"effect must be given, if possible, to every word,
sentence and section." *Grand Rapids v Crocker,*
219 Mich 178, 182; 189 NW 221 (1922). Moreover,
to discover the legislative intent, "the entire act
must be read, and the interpretation to be given to
a particular word in one section arrived at after
due consideration of every other section so as to
produce, if possible, a harmonious and consistent
enactment as a whole." *Id.* at 182-183. However,

[w]here the language of a statute is of doubtful
meaning, a court must look to the object of the
statute in light of the harm it is designed to
remedy, and strive to apply a reasonable construc-
tion that will best accomplish the Legislature's
purpose. [*Marquis v Hartford Accident & Indem-
nity (After Remand),* 444 Mich 638, 644; 513 NW2d
799 (1994). Citations omitted.]

Pursuant to these rules of construction, we con-
sider MCL 600.3815; MSA 27A.3815 in our analy-
sis of whether an abatable nuisance exists. The
section provides:

In any action brought under this chapter, evi-

dence of the general reputation of the building, vehicle, boat, aircraft *or* place is admissible for the purpose of proving the existence of the nuisance. [Emphasis added.]

The nuisance abatement statute's use of the disjunctive "or" allows us to consider the reputation of the vehicle *or* the place to determine whether a nuisance exists. The *Random House College Dictionary* defines "place" as "an open space, or square, in a city or town," "a short street, court," and "an area of habitation, as a city, town, or village." Given the unique facts in this case, we focus on the word "place" set forth in MCL 600.3815(1); MSA 27A.3815(1). We conclude that the word "place" may encompass a neighborhood, and we therefore consider the general reputation of the area surrounding the Eight Mile and Sheffield intersection for purposes of determining the existence of a nuisance.[21]

Several members of that neighborhood testified about numerous incidents where they had personally been accosted and solicited. The arresting officer confirmed that many arrests for prostitution were made in that neighborhood. Several neighbors testified that they had been solicited on more than one occasion. One witness testified that he had observed acts of prostitution near the corner of Eight Mile and Gardendale and that on one occasion he found his young son staring at strange vehicles parked near that corner in which men

---

[21] See *State ex rel Wayne Co Prosecuting Attorney v Bernstein,* 57 Mich App 204, 206; 226 NW2d 56 (1974), upholding the abatement of a bar under MCL 600.3801; MSA 27A.3801 where "officers testified to numerous arrests for accosting and soliciting, and to the general reputation of the Vernor Bar as a place where the services of a prostitute can easily be obtained." See also *People v Lee,* 307 Mich 743, 753; 12 NW2d 418 (1943), upholding admission of testimony of three witnesses about the "general reputation in the vicinity" of a house of prostitution in an action to convict the owner of the house.

and women were apparently committing acts of prostitution. These incidents reflect concerns identical to those cited in *Garfield* and *Bloss, supra.*

Thus, the present case involves a condition that, on the basis of the record below, is a public nuisance in this neighborhood. It cannot be contested that a significant threat to public peace and safety exists in the Eight Mile and Sheffield neighborhood. Vehicles that enter the neighborhood in order to solicit acts of prostitution are being "used for" the continuance of this nuisance. Therefore, we would hold that the nuisance abatement statute allows the abatement of a vehicle where the driver entered into and thereby contributed to an existing condition that is a public nuisance.[22]

D

This remedy is also buttressed by our review of the overall objective of the nuisance abatement statute. We note that in 1988, minor changes were made to the statute.[23] It appears clear from the amendment that the Legislature intended to remedy the inevitable decline of vice-laden neighborhoods. In the amendment, references to "narcotic and/or hypnotic drug" were changed to the broader and more encompassing phrase, "controlled substance." The arguments presented in support of the amendment stated: "Dope houses are a plague upon the city neighborhoods in which they occur. Drug trafficking, violent crime, and theft endanger and disrupt the lives of law-abiding

[22] We note that our position is limited to situations in which a nuisance condition exists, regardless of the city. Therefore, a vehicle could not be abated if the same situation arose in another area of Detroit, such as Palmer Woods, where certainly no such nuisance condition exists.

[23] The 1988 amendment was in effect when the act occurred in the Bennis vehicle.

citizens. The appearance of dope houses can put an entire neighborhood into decline."[24]

The legislative objective was also addressed in *People ex rel Wayne Prosecuting Attorney v Sill,* 310 Mich 570; 17 NW2d 756 (1945). In *Sill,* this Court held that the purpose of the nuisance abatement statute[25] was "to eliminate effectively, by statutory procedure, the use of property, real or *personal,* in connection with gambling, *prostitution,* and illicit sale of liquor . . . ." *Id.* at 575 (emphasis added). Similarly, *State ex rel Wayne Co Prosecuting Attorney v Bernstein,* 57 Mich App 204, 208; 226 NW2d 56 (1974), held that "[t]he padlock law is designed to facilitate the elimination of certain situations which have been found to interfere with a substantial community interest." Thus, we believe that our position is consistent with the intent of the Legislature.

E

Moreover, the holding in *State ex rel Attorney*

---

[24] House Legislative Analysis, HB 4317, May 13, 1987.

[25] The present statute is almost identical to its predecessor on which the *Sill* case is based. The statute read as follows:

Any building, vehicle or place used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons, or used for the unlawful manufacture, storing, possessing, transporting, sale, keeping for sale, giving away, bartering, furnishing or otherwise disposing of any vinous, malt, brewed, fermented, spirituous or intoxicating liquors or any mixed liquors or beverages, any part of which is intoxicating, is hereby declared a nuisance and the furniture, fixtures and contents of any such building, vehicle or place, and all such intoxicating liquors therein are also declared a nuisance, and all such nuisances shall be enjoined and abated as hereinafter provided. Any person, or his servant, agent or employe who shall own, lease, conduct or maintain any building, vehicle or place used for any of the purposes or by any of the persons above set forth or where any of the acts above enumerated are conducted, permitted or carried on, is guilty of a nuisance. [1929 CL 9093. Cf., n 1.]

*General v Robinson,* 250 Mich 99; 229 NW 403 (1930), is analogous to our position in the present case and conclusively persuades us that we have achieved a remedy consistent with the legislative intent. In *Robinson, one* apartment in a fifty-unit building was abated where proof of a *single* incident of prostitution was submitted. A police officer witnessed a solicitation by a prostitute and the entry of the apartment to commit the act. Although there was proof of only one act of prostitution in the abated apartment, this Court considered the general reputation of the building and the fact that the woman pleaded guilty to charges of prostitution and concluded that "the nuisance use of the premises . . . can be found without drawing on the imagination." *Id.* at 104.

The dissent maintains that reliance on *Robinson* is misplaced. The dissent's recitation of the facts of *Robinson,* however, only confirms that it is persuasive authority for the proposition that a single act sufficiently constitutes a nuisance where a larger nuisance condition exists. The dissent correctly states: "A police officer witnessed *a* solicitation outside the building, watched two persons go into the building, and arrested the pair when they came out of the building." *Post,* p 746 (emphasis added). It is vital to note that ultimately the *only* apartment abated was the one in which a *single* act of prostituion occurred. Further, it was only abated after consideration of the reputation of the larger nuisance condition existing in the building itself, which *could not* be abated in that case.

As previously stated, the nuisance abatement statute has remained virtually unchanged since *Robinson,* and our position therefore would apply a priori to the present case. The one act of prostitution in *Robinson* was considered with regard to

the general reputation of the entire building. Similarly, the one act of nuisance by Mr. Bennis in his vehicle must be viewed in light of the larger and continuing nuisance occurring in the neighborhood. Where testimony surrounding proof of an incident of prostitution unequivocally establishes that the neighborhood has a reputation for prostitution, the property contributing to the continuance of the nuisance may be abated pursuant to the statute. To hold otherwise would allow the criminal actors to circumvent the statute where a different vehicle was used in the commission of each offense. The result would permit the continuing blight of neighborhoods, contrary to the clear intent of the statute. Accordingly, we would hold that the Court of Appeals erred in concluding that the act of prostitution occurring in the Bennis vehicle in a neighborhood known for prostitution was not an abatable nuisance.

IV

Finally, we consider whether a co-owner's interest in a vehicle may be abated where the co-owner had no knowledge that the vehicle was used in a manner proscribed by the nuisance abatement statute. Despite the clear and unambiguous language of the statute indicating that a property owner's knowledge or consent is not required,[26] decisions of this state have nonetheless reached different conclusions with respect to this issue. We would resolve the conflict and would hold that knowledge is not required.

[26] "Proof of knowledge of the existence of the nuisance on the part of the defendants or any of them, is not required." MCL 600.3815(2); MSA 27A.3815(2). The language is nearly identical to the original language of the public nuisance statute: "Proof of knowledge of the existence of such nuisance on the part of the defendants or any of them, shall not be required." 1925 PA 389, § 9.

A

The schism has its underpinnings in *Schoonmaker, supra,* a pre-1988 case. *Schoonmaker* seemingly required proof of an owner's consent to the illegal use of the property to be abated. The clear language of the nuisance abatement statute abrogates the requirement of knowledge.[27] In *Schoonmaker,* certain illegal acts were committed by people attending a dance hall. However, those acts were not committed inside the dance hall; instead, patrons consumed intoxicating liquor outside the hall. In this manner, all proscribed activity was divorced from the property sought to be abated. The property itself was not in any way used to facilitate the proscribed act, unlike the set of facts before us.

On the basis of these facts, it appears that Justice Wiest in *Schoonmaker* did not intend a result inconsistent with the nuisance abatement statute. Additionally, it is apparent that Justice Wiest did not intend to contradict the provision of the abatement statute because only three years later in *Robinson, supra* at 103, Chief Justice Wiest concluded that the statute "expressly obviates need of knowledge on the part of the owner of nuisance use of his premises."

*Schoonmaker,* however, begat confusion regarding the statutory requirement of knowledge. Subsequent cases have ruled consistently with the result that an owner's knowledge is not required. *Bitonti, supra,* and *People ex rel Wayne Prosecuting Attorney v Tate,* 306 Mich 667; 11 NW2d 282 (1943), involved the abatement of a motor vehicle illegally used for gambling. Both cases relied on the statute, holding that an owner's knowledge is

[27] See n 26.

not required.[28] However, several other cases apparently read *Schoonmaker* to require the owner's knowledge.[29] In light of the plain language of the nuisance abatement statute and the Michigan Supreme Court decisions in *Robinson, Bitonti,* and *Tate,* we would hold that the statute expressly obviates the requirement that an owner consent to or acquiesce in the illegal use of property.[30] We likewise would hold that *Schoonmaker* is distinguishable because in that case "[i]ntoxicating liquor was not used in the dance hall but secreted by patrons outside of the hall and secretly visited." *Id.* at 182.[31]

## B

Finally, therefore, we consider the constitutional

---

[28] Also, in *State ex rel Oakland Prosecuting Attorney v Weaver,* 74 Mich App 462, 464; 254 NW2d 68 (1977), the Court of Appeals again considered the knowledge requirement of the nuisance statute and concluded: "Considering the clear language of the statute, we are convinced that *Robinson, Bitonti* and *Tate* are correct."

[29] In *State ex rel Wayne Prosecuting Attorney v Weitzman,* 21 Mich App 705, 711; 176 NW2d 463 (1970), the Court held that an owner must have knowledge of acts of prostitution before padlocking the premises. *Weitzman* acknowledged *Robinson* and its progeny, but chose the course initiated by *Schoonmaker. Id.* Likewise, in *Motorama, supra* at 228, the Court of Appeals returned to the *Schoonmaker* decision, after *Weaver,* n 28 *supra,* stating that it had never been formally overruled. *Motorama* also cited dicta from *Levenburg, supra,* supporting its decision requiring an owner's knowledge:

[W]e acknowledge that a judgment for abatement in a prosecution of this nature cannot be rendered without a finding of knowledge of the accosting and soliciting on the part of the owners or operators of the place found to be a nuisance and their acquiescence in those activities. [*Id.* at 462, n 1.]

[30] As explained in *McKibbin v Corp & Securities Comm,* 369 Mich 69, 81; 119 NW2d 557 (1963), "[w]e have no other duty to perform than to construe the legislative will as we find it, without regard to our own views as to the wisdom or justice of the act."

[31] To the extent the reasoning of *Schoonmaker* may be read to imply that an owner must know that the property is being used in proscription of the statute, we choose not to follow it.

significance of the abatement of Mrs. Bennis' interest in the vehicle. We assume, arguendo, that Mrs. Bennis did not have knowledge of or consent to the misuse of the Bennis vehicle, of which she was co-title owner. Historically, consideration was not given to the innocence of an owner because the property subject to forfeiture was the evil sought to be remedied.[32] As recently as the landmark forfeiture case, *Calero-Toledo v Pearson Yacht Leasing Co,* 416 US 663, 683; 94 S Ct 2080; 40 L Ed 2d 452 (1974), the United States Supreme Court has reflected this view: "the innocence of the owner of property subject to forfeiture has almost uniformly been rejected as a defense."

In *Van Oster v Kansas,* 272 US 465, 467; 47 S Ct 133; 71 L Ed 354 (1926), the Supreme Court upheld the forfeiture and sale of an automobile used to transport liquor as proscribed by a Kansas statute. In declaring the vehicle a common nuisance, the Court rejected the innocent owner's Fourteenth Amendment due process claim because "the offense of unlawful transportation was committed by one entrusted by the owner with the possession and use of the offending vehicle."

In *Calero, supra,* the Supreme Court forfeited a lessor's interest in a yacht used to transport marijuana. The lessor had no knowledge that the yacht

---

[32] See, e.g., *The Palmyra,* 25 US (12 Wheat) 1, 14; 6 L Ed 31 (1827), in which Justice Story held that "[t]he thing is here primarily considered as the offender, or rather the offence is attached primarily to the thing . . . ." In *United States v The Little Charles,* 26 F Cas 979, 982; 1 Brock 347 (CC D Va, 1818) (No. 15,612), Chief Justice Marshall held that the proceeding was "against the vessel, for an offence committed by the vessel, which is not less an offence, and does not the less subject her to forfeiture, because it was committed without the authority, and against the will of the owner." *Dobbins' Distillery v United States,* 96 US 395, 400; 24 L Ed 637 (1877), stated that "[b]eyond all doubt, the act of Congress in question attaches the offence to the distillery, and the real and personal property connected with the same . . . ." *Harmony v United States,* 43 US (2 How) 210, 238; 11 L Ed 239 (1844).

was used illegally.[33] Consistent with *Van Oster,
supra,* the Court stated that it "has been implied
that it would be difficult to reject the constitu-
tional claim of an owner whose property subjected
to forfeiture had been taken from him without his
privity or consent." *Calero, supra* at 689. *Calero*
went further and stated in dicta that "the same
might be said of an owner who proved not only
that he was uninvolved in and unaware of the
wrongful activity, but also that he had done all
that reasonably could be expected to prevent the
proscribed use of his property . . . ." *Id.*

Applying the principles of *Van Oster* and *Ca-
lero,* it is evident that Mrs. Bennis' claim is with-
out constitutional consequence. Mrs. Bennis was a
joint owner who explicitly or implicitly *entrusted*
Mr. Bennis with the use and possession of their
vehicle. *Van Oster, supra.* It is clear from *Calero*
that the abatement of property stolen from the
owner or taken without the owner's knowledge
would be prohibited. However, on the basis of the
facts before us, the argument cannot be made that
the vehicle was stolen or initially driven without
Mrs. Bennis' knowledge.

Moreover, in the Michigan forfeiture case, *Peo-
ple v One 1979 Honda Automobile,* 139 Mich App
651, 655-656; 362 NW2d 860 (1984), the Court of
Appeals held that knowledge by one co-owner of
the illegal activity was sufficient to forfeit the

[33] The Court ultimately held that the boat subject to forfeiture was
voluntarily entrusted to a lessee who illegally used it and that,
because there was no allegation or proof that the innocent lessor "did
all that it reasonably could to avoid having its property put to an
unlawful use," forfeiture was appropriate, despite the company's lack
of knowledge. *Id.* at 690. The Court further stated that the contested
forfeiture statutes "further the punitive and deterrent purposes that
have been found sufficient to uphold, against constitutional challenge,
the application of other forfeiture statutes to the property of inno-
cents." *Id.* at 686.

interest of both owners. The car was forfeited[34] in that case even though one of the titled owners had no knowledge of the illegal activities committed within the car. *Id.* The unconstitutionality of the forfeiture was not even considered.[35]

Having concluded that the abatement of the Bennis vehicle is not constitutionally infirm, we address the dissent's contention that "the trial court has broad discretion to fashion an appropriate remedy." *Post,* p 753. It is not contested that this is an equitable action. That being the case, it is critical to recognize that the trial judge considered alternatives on the record and, in the exercise of his discretion, fashioned an appropriate remedy, abating the entire interest in the vehicle. We merely sanction the trial judge's action, which is clearly permitted under the nuisance abatement statute, and find that such action was not an abuse of discretion.

Review of the controlling cases persuades us that no constitutional violation results from the abatement of Mrs. Bennis' interest in the vehicle. The United States Supreme Court indisputably allows forfeiture of an innocent owner's property, unless evidence was submitted that the property was stolen or used without the consent of the owner.[36] *Van Oster; Calero, supra.* Other jurisdic-

---

[34] The car was used to facilitate an illegal drug transaction.

[35] See also *In re Forfeiture of $53,* 178 Mich App 480, 495; 444 NW2d 182 (1989), in which the Court again considered the issue and this time determined that the forfeiture statute "was intended to establish a separate defense for *each* claimant who has a personal interest in the property as an owner." Although the Court did not forfeit the interest of the innocent owner, the decision was based on statutory construction, not a constitutional violation.

[36] We note the distinction between the situation in which a vehicle is used without the owner's consent and, although the owner consented to the use, it is used in a *manner* to which the owner did not consent. In the former, the innocent owner's interest could not be abated. *Van Oster; Calero, supra.* In the latter, as in the present case, the innocent owner's interest may be abated.

tions addressing the issue have allowed the abatement of a co-owner's interest on strikingly similar facts.[37] The Michigan nuisance abatement statute specifically obviates the requirement of proof, and because the statute does not violate the constitution, the Court of Appeals incorrectly held that proof of knowledge of the proscribed activity is required. Additionally, we do not find that the trial judge abused his discretion in fashioning an appropriate remedy, abating the entire interest of the vehicle.

V

In summary, we would hold that an act of lewdness as defined herein occurred and made the vehicle abatable. Moreover, reviewing the entire record, we find that an act of fellatio occurred so as to create a clear inference that it was for monetary compensation. Proof of an actual exchange of the money is not required by the statute or decisions of this Court. Thus, alternatively, we would hold that a complete act of prostitution occurred in the Bennis vehicle. Additionally, because the act occurred in a neighborhood that was a place reputed for prostitution and therefore a public nuisance, Mr. Bennis' vehicle contributed to

[37] Similarly, in *People v Garner,* 732 P2d 1194, 1196 (Colo, 1987), the Colorado Supreme Court held that the entire ownership of an abated vehicle *could not* be vested in the innocent co-owner wife. The court stated that the district court had "inherent equitable authority" to allocate a portion of the proceeds after costs to the innocent owner. Under the statute, however, the court *was not* obliged to do so. Further, in any event, the court could not award the innocent co-owner wife full ownership of the vehicle.

In *In re 1976 Blue Ford Pickup,* 120 Ariz 432, 435; 586 P2d 993 (Ariz App, 1978), the Arizona Court of Appeals upheld forfeiture of a truck jointly owned by a mother and son where the mother had no knowledge of the prohibited use of the truck. The son's illegal possession of marijuana subjected the truck to forfeiture, and the mother's status as an innocent owner could not "salvage the vehicle from the forfeiture occasioned through the activities of the joint owner."

that continuing nuisance and may be abated. Finally, we would hold that the clear and unambiguous language of the Michigan nuisance statute obviates the requirement of an owner's knowledge of the proscribed activity and that the statute unquestionably passes constitutional muster. For all the foregoing reasons, we would reverse the decision of the Court of Appeals.

Boyle and Mallett, JJ., concurred with Riley, J.

Griffin, J., concurred only in the result.

Cavanagh, C.J. (*dissenting*). As Mr. Rogers would say, "It's a wonderful day in the neighborhood." In this public nuisance abatement case, the focus should be clear: Was the defendants' vehicle an abatable public nuisance? I cannot agree with the lead opinion's mystical concept that under the statute we can call the *condition* of an entire neighborhood a public nuisance. Nor can I agree with its invention that any vehicle contributing to this condition can be abated.

I remain unconvinced that the conduct at issue in the instant case comes within the scope of the public nuisance abatement statute. Assuming arguendo that it does, I do not believe that a single incident, absent circumstances giving rise to a reasonable inference of habitual and continuing nuisance activity, is sufficient to support abatement. Therefore I dissent.

I. THE SINGLE INSTANCE OF ACTIVITY ISSUE

Assuming arguendo that the conduct did fall within the scope of the public nuisance abatement statute, the issue becomes whether a single in-

stance of that conduct establishes an abatable public nuisance.

The lead opinion states:

> [W]e must next determine whether *an* act of prostitution committed in a neighborhood known for illicit activity is within the purview of the statute. [*Ante,* pp 729-730.]

There are serious flaws with the mystical concept that follows. The lead opinion examines the *evidentiary* provision of the statute and finds the word "place." Yet, "place" is already used in the statutory provision that defines an abatable public nuisance, i.e., § 3801: "Any building, vehicle, boat, aircraft, or place . . . ." MCL 600.3801; MSA 27A.3801.

The lead opinion reasons:

> The nuisance abatement statute's use of the disjunctive "or" allows us to consider the reputation of the vehicle *or* the place to determine whether a nuisance exists. [*Ante,* p 733.]

The lead opinion then relies on the dictionary definition of "place" to reach "neighborhood." Relying on testimony about prostitutes in the neighborhood, the lead opinion concludes that this "condition" of the *neighborhood* is a public nuisance.

Note, the lead opinion would not hold that the *vehicle* is the nuisance. It cites *People ex rel Wayne Prosecuting Attorney v Sill,* 310 Mich 570; 17 NW2d 756 (1945), as support. In *Sill,* the *car* that was used for gambling purposes was declared the nuisance. *Id.* at 572. It also cites *State ex rel Wayne Co Prosecuting Attorney v Bernstein,* 57 Mich App 204; 226 NW2d 56 (1974). In *Bernstein,* the *bar* where the prostitutes were soliciting was declared the nuisance. *Id.* at 205. It also relies on

*State ex rel Attorney General v Robinson,* 250 Mich 99; 229 NW 403 (1930). There, the *apartment* where the act of prostitution occurred was declared the nuisance. *Id.* at 104. None of these cases supports the holding that the condition is the nuisance.

The lead opinion addresses the single incident issue in one short passage. It relies on *State ex rel Attorney General v Robinson, supra.*

In *Robinson,* the defendant's building contained fifty apartments. The building had a reputation for prostitution. A police officer witnessed a solicitation outside the building, watched two persons go into the building, and arrested the pair when they came out of the building. The woman told the officer that they had used apartment 404. The trial court abated twenty-two of the apartments. This Court reversed the abatement order with respect to twenty-one of the apartments on the basis of the statutory provision that the nuisance activity must have occurred within thirty days of filing the complaint. *Id.* at 103. Since only the particular incident in apartment 404 had occurred within the thirty days preceding the filing of the complaint, the Court found that abatement of the other twenty-one apartments was improper. However, it abated apartment 404 on the basis of the incident observed by the police officer and because the Court found that the activity in that apartment was *not* an isolated event on the basis of the reputation of the building. *Id.* at 103-104.

*Robinson* is clearly distinguishable. The apartment was a permanent part of the building. Therefore, the reputation of the building is logically relevant to a permanent part of the building. Contrary to the statement of the lead opinion that the building in *Robinson* could not be abated, the *Robinson* Court stated that "if the apartment was

not identified, then the whole house might be closed." *Id.* at 104. Conversely, the vehicle in the instant case was not a permanent part of the "condition," as the lead opinion defines it. Furthermore, because the proper focus in this case is on the vehicle that the plaintiff sought to abate, the reputation of the area is not relevant to whether this particular vehicle is a public nuisance where the vehicle was not permanently connected to the area. Additionally, there is no evidence that continuing nuisance activity was occurring in *this* vehicle.

In the instant case, the lead opinion would hold:

> Where testimony surrounding proof of an incident of prostitution unequivocally establishes that the neighborhood has a reputation for prostitution, the property contributing to the continuance of the nuisance may be abated pursuant to the statute. [*Ante,* p 737.]

The subject of the holding, "property contributing to the continuance of the nuisance," is far too broad and unlimited in scope.

The prosecutor brought this action to abate the defendants' *vehicle.* The public nuisance abatement statute provides:

> Any . . . vehicle, . . . used for the purpose of lewdness, assignation or prostitution . . . , is declared a nuisance, . . . and all . . . nuisances shall be enjoined and abated as provided in this act and as provided in the court rules. [MCL 600.3801; MSA 27A.3801.]

The prosecution established only *one* incident of sexual activity involving *this* vehicle. Further, there was no evidence to create a reasonable inference that the sexual activity in *this* vehicle was habitual or continuing.

The Court of Appeals majority followed the approach taken in *State ex rel Oakland Co Prosecutor v Motorama Motel Corp,* 105 Mich App 224; 307 NW2d 349 (1981), to find that a single incident of lewdness was not sufficient. The *Bennis* majority reasoned:

> The *Motorama* approach best effectuates the purpose of the statute. The abatement statute was enacted to subject houses of prostitution to abatement as nuisances. *State ex rel Wayne Co Prosecutor v Diversified Theatrical Corp,* 396 Mich 244, 246-250; 240 NW2d 460 (1976). The purpose of the act has also been described as eliminating the use of property in connection with gambling, prostitution, and the illicit sale of liquor. *People ex rel Wayne Prosecuting Attorney v Sill,* 310 Mich 570, 575; 17 NW2d 756 (1945); *State ex rel Oakland Prosecuting Attorney v Ginell,* 159 Mich App 679, 681-682; 407 NW2d 59 (1987). The statute is not intended to regulate the morality of individuals, or to prevent incidents of immorality in, for example, hotels that are otherwise respectable establishments. See *Diversified Theatrical Corp, supra,* 247.
>
> As in *Motorama,* we hold that a single incident is insufficient to establish a nuisance. Further, the circumstances of this case do not permit a reasonable inference that the conduct was habitual. In this case, the prosecution has alleged only a single incident to support the contention that defendants' car was a nuisance. While the prosecution discusses at length the reputation and record of . . . the woman found in the car with Mr. Bennis, this does not establish that defendants' car was used on more than that occasion for lewdness, assignation, or prostitution. Similarly, testimony was presented that Mr. Bennis was seen on more than one occasion driving in that area and talking to women. Not only does this observed conduct not prove that defendant was involved in lewdness, assignation, or prostitution, there was no evidence to establish that this conduct, if it occurred, took

place in the vehicle in question. In fact, defendants allegedly purchased the car only three weeks before the incident that gave rise to this action. [200 Mich App 675-676.]

In *Motorama*,[1] the panel stated that "[a] nuisance involves the notion of repeated or continuing conduct and should not be based upon proof of a single isolated incident unless the facts surrounding that incident permit the reasonable inference that the prohibited conduct was habitual in nature." *Motorama* at 229-230, citing *People ex rel Wayne Prosecuting Attorney v Bitonti*, 306 Mich 115, 119-120; 10 NW2d 329 (1943).

I would continue this limitation.[2] The New York Court of Appeals similarly follows this approach:

[W]e do not hold, that any premises on which an isolated act of lewdness, assignation or prostitution occurs is subject to the remedies of [the houses of prostitution abatement statute]. Rather, we agree . . . that "the People will have to show a *consistent pattern* of conduct sufficient to prove that the premises are being employed for a proscribed use."

---

[1] In *Motorama,* the defendant's hotel was across the street from a bar that was frequented by persons engaged in prostitution. The Court held that the single incident at the hotel was insufficient to support abatement of a nuisance.

[2] See 58 Am Jur 2d, Nuisances, § 77, p 730:

Nuisance, as a general rule, involves the idea of continuity or recurrence; the maintenance of a nuisance ordinarily implies a continuity of action over a substantial period of time, and the continuance of the acts constituting the nuisance for an unreasonable period. Thus, it has been said that to constitute a nuisance there must be a continuousness or a recurrence of the acts by which it is created.

See, generally, Glesner, *Landlords as cops: Tort, nuisance & forfeiture standards imposing liability on landlords for crime on the premises,* 42 Case W Res L R 679, 716-737 (1992). "Arrests can constitute evidence of a nuisance, but they must be sufficiently frequent to establish a *habitual* illegal use of the property." *Id.* at 732 (emphasis added).

The most significant factors in making this factual determination will be the frequency of the conduct, the knowledge or even encouragement by the defendant of its existence, and the extent of the benefit, direct or indirect, derived by defendant from such activity. [*People ex rel Arcara v Cloud Books, Inc,* 65 NY2d 324, 331; 491 NYS2d 307; 480 NE2d 1089 (1985) (emphasis added) (citation omitted), rev'd on other grounds 478 US 697 (1986) (first amendment issue), modified on remand 68 NY2d 553; 510 NYS2d 844; 503 NE2d 492 (1986).][3]

Further, the public nuisance abatement statute is aimed at property that has become so associated with the activity that it has become part of the activity. In *State ex rel Carroll v Gatter,* 43 Wash 2d 153, 160; 260 P2d 360 (1953), the Washington Supreme Court construed its state's "red-light" statute, which, like Michigan's "red-light" statute, i.e., the public nuisance abatement statute, was derived from the Iowa abatement statute.[4] It explained the function of the statute:

To sustain the application of the act, it must be shown to the satisfaction of the court, by a preponderance of the evidence, that the premises were being used as a house of lewdness, assignation, or prostitution as that term is generally understood. The "use" of the premises of which the statute speaks, requires more than a showing that sporadic acts of prostitution occurred therein. . . .

The statute is not directed to the abatement of commercial eroticism—that is governed by the criminal statutes. It is directed to the abatement of premises which, by reason of sufficient happenings therein, *have absorbed and taken the charac-*

[3] See also *New York City v Big Apple Spa,* 130 Misc 2d 920, 923; 497 NYS2d 988 (1986): "One incident of prostitution has been established. An isolated incident is, of course, not enough."

[4] See *State ex rel Wayne Co Prosecutor v Diversified Theatrical Corp, supra* at 246-247.

*ter of the acts committed, and have in fact become
houses of lewdness, assignation or prostitution. [Id.
at 160. Emphasis added.]*

Additionally, the use of the vehicle in the instant case is distinguishable from the use of vehicles in the "numbers racket" gambling cases because the use of the Bennis vehicle was not "essential" to the act of gross indecency. The vehicle was merely a convenient location. By contrast, this Court has held that in the numbers racket situation "[t]he use of automobiles as *essential tools* in this type of gambling is generally recognized." *Sill* at 575 (emphasis added). Where the vehicle is an *essential* tool to accomplish continuing nuisance activity, the argument that a single act is sufficient is much stronger.

In the instant case, I would find that there was no evidence to support a reasonable inference of continuing or habitual illegal activity. Therefore, it was improper to abate the defendants' vehicle.

## II. THE KNOWLEDGE ISSUE

As explained above, I do not believe that the conduct at issue was within the scope of the public nuisance abatement statute, nor was it proven to be of a continuing nature. However, in anticipation of cases that do involve proscribed nuisance activity, I address the proof of knowledge issue.

Beginning with *People v Schoonmaker,* 241 Mich 177; 216 NW 456 (1927),[5] two lines of contrary precedent have developed through Michigan

---

[5] In *Schoonmaker,* the Court considered whether a public dance hall was an abatable public nuisance under an earlier version of this statute. The defendants did not serve alcohol on the premises, but some of their patrons secretly slipped outside the building during the dance to consume alcohol. The Court addressed the threshold of conduct required on the part of the defendant:

case law regarding whether the plaintiff must show that the owner of the property knew that the nuisance activity was occurring before the property can be abated.[6] In the instant case, the lead opinion addresses the issue and concludes that proof of knowledge is not required. The statute clearly provides that proof of knowledge is not required.[7] And, although abating the property of innocent owners in forfeiture actions arguably does not violate an owner's constitutional right to due process,[8] that does not make such forfeitures fair or equitable.

Defendants did not maintain a nuisance unless they permitted such illegal use of the premises; that is, consented to it or acquiesced, and whether they did so was a question of fact . . . .

\* \* \*

One inviting the public to his place for commercial purposes must take care not to invite or acquiesce in transgressions of the law. That transgressions may happen is possible, and remain offenses of the wrongdoer unless tolerated by the occupant to the extent of permissive use of the premises for such purpose or indifference thereto. The statute does not deprive one person of the use of his property by reason of the illegal acts of another, unless the owner's use bears a participating relation to the violation. [*Id.* at 181.]

See *State ex rel Wayne Co Prosecuting Attorney v Levenburg,* 406 Mich 455, 462, n 1; 280 NW2d 810 (1979); *State ex rel Oakland Co Prosecutor v Motorama Motel Corp, supra* at 228; *State ex rel Wayne Prosecuting Attorney v Weitzman,* 21 Mich App 705, 710-711; 176 NW2d 463 (1970).

[6] Other cases held that the statute obviated the need for proof of knowledge. See *Bitonti* at 119 (plurality); *Robinson* at 103; *State ex rel Oakland Prosecuting Attorney v Weaver,* 74 Mich App 462, 464; 254 NW2d 68 (1977).

[7] MCL 600.3815; MSA 27A.3815.

[8] See *Calero-Toledo v Pearson Yacht Leasing Co,* 416 US 663; 94 S Ct 2080; 40 L Ed 2d 452 (1974).

In the instant case, after reviewing cases from the United States Supreme Court, the majority states:

The United States Supreme Court indisputably allows forfeiture of an innocent owner's property, unless evidence was submitted that the property was stolen or used without the consent of the owner. [*Ante,* p 742.]

The abatement of public nuisances is an equitable action. MCL 600.3805; MSA 27A.3805. See MCR 3.601; 58 Am Jur 2d, Nuisances, § 321, pp 911-912. As such, the trial court has broad discretion to fashion an appropriate remedy.[9] 58 Am Jur 2d, Nuisances, § 355, pp 946-947. Historically, an equity court would not enjoin criminal activity, except in nuisance cases. See Dobbs, Remedies (2d ed), § 2.9(3), p 169. One must remember that the public nuisance abatement action arose in equity because the available legal remedies, i.e., criminal penalties, were inadequate to stop future and continuing injury.[10] Correspondingly, equity courts have shown reluctance to intervene where the activity is criminal. In *People v Lim,* 18 Cal 2d 872; 118 P2d 472 (1941), the California Supreme Court considered whether a gambling establishment could be abated in the absence of a specific statutory provision. It explained the reluctance of equity courts to intervene:

> Conduct against which injunctions are sought in
> behalf of the public is frequently criminal in na-

This statement sweeps too broadly. The statement should be limited to due process considerations. The United States Supreme Court has recently held that forfeitures of property under 21 USC 881, the drug forfeiture statute, are subject to the excessive fines constitutional provision. *Austin v United States,* 509 US —; 113 S Ct 2801; 125 L Ed 2d 488 (1993).

[9] This Court has recognized this broad authority: "Of the transcendent power in an equity court, under its general jurisdiction, to restrain and abate a continuing public nuisance for which, by reason of its extent and nature, there is no plain and adequate legal remedy, there can be no question." *Detroit v Highland Park,* 186 Mich 166, 182; 152 NW 1002 (1915).

[10] See *Marsland v Pang,* 5 Hawaii App 463, 475-478; 701 P2d 175 (1985) (reviewing an equity action for nuisance abatement). See, generally, Patterson, *California land use regulation post* Lucas: *The history and evolution of nuisance and public property laws portend little impact in California,* 11 UCLA J of Envtl & Poly L 175, 186-197 (1993) (history of public nuisance). See *Lucas v South Carolina Coastal Council,* 505 US 1003; 112 S Ct 2886; 120 L Ed 2d 798 (1992).

ture. While this alone will not prevent the intervention of equity where a clear case justifying equitable relief is present . . . , it is apparent that the equitable remedy has the collateral effect of depriving a defendant of the jury trial to which he would be entitled in a criminal prosecution for violating exactly the same standards of public policy. . . . The defendant also loses the protection of the higher burden of proof required in criminal prosecutions and, after imprisonment and fine for violation of the equity injunction, may be subjected under the criminal law to similar punishment for the same acts. For these reasons *equity is loath to interfere* where the standards of public policy can be enforced by resort to the criminal law, and in the absence of a legislative declaration to that effect, the courts should not broaden the field in which injunctions against criminal activity will be granted. [*Id.* at 880. Emphasis added.]

Particularly, where there is no evidence that the conduct at issue will be continuing in the future, the court should hesitate to exercise its equitable powers to abate the property.[11]

Consequently, I would hold that the trial court, exercising its equitable discretion, should consider the equities and circumstances of each case and tailor the remedy to fit the situation. See *People ex rel Wayne Prosecuting Attorney v Tate,* 306 Mich 667, 669; 11 NW2d 282 (1943) (the decision to deny an abatement order is within judicial discretion).

The Court in *People v Garner,* 732 P2d 1194 (Colo, 1987), illustrated the remedial possibilities for situations involving innocent parties.[12] The

___

[11] See 58 Am Jur 2d, Nuisances, § 324, p 913 ("injunctive relief against nuisances should be cautiously given").

[12] The *Garner* court explained:

[T]he court in the exercise of its equity powers had the

*Garner* court noted the equitable powers of the
trial court:

> Our construction of the Public Nuisance Statute
> to require the forfeiture of a jointly owned vehicle
> determined to be a public nuisance, even though
> one of the co-owners is innocent of any wrong-
> doing, does not mean that the innocent party's
> interest in the vehicle may not be recognized and
> conserved. On the contrary, an action for the
> abatement of a . . . public nuisance is equitable
> in nature, . . . and while a court in the exercise
> of its equity powers may not act contrary to statu-
> tory mandate, it does retain a considerable degree
> of discretion and flexibility in fashioning a decree
> that achieves a fair result under the particular
> circumstances of the case. . . . In a forfeiture
> situation, therefore, a court retains the authority
> to protect, to the extent practicable and within the
> framework of the statutory dispositional alterna-
> tives, the interest of the innocent party. [*Id.* at
> 1197. Citations omitted.]

For instance, a trial court could order the prop-
erty sold, with proportionate net proceeds to be
paid to innocent owners, or the court could allow
the innocent owners to bid at the sale and acquire
full ownership interest, or the government agency
itself could pay the proportionate net worth di-
rectly to the innocent owners. By leaving such a
determination to the equitable discretion of the
trial court, each case will be decided on its own
merits.

authority to order a sheriff's sale of the vehicle on the condi-
tion that one-half of the proceeds of the sale, after deduction of
fees and costs incident to the seizure and the abatement action,
be paid to [the ex-wife], or that [the ex-wife] be given the
opportunity to bid at the sheriff's sale on the forfeited interest
of [the husband] and thereby acquire the entire interest in the
vehicle, or that the vehicle be delivered to the seizing agency
. . . upon the agency's payment of one-half of the fair market
value of the vehicle to [the ex-wife]. [*Id.* at 1198-1199.]

In the instant case, the vehicle was jointly owned by Mr. and Mrs. Bennis. Mrs. Bennis had no knowledge that her husband used the vehicle to engage in an act of gross indecency. Assuming arguendo that his conduct came within the reach of the abatement statute, I would hold that the trial court should tailor a remedy to protect her property interest.

In reaching its conclusion that Mrs. Bennis' property interest may be abated, the lead opinion cites *People v One 1979 Honda Automobile,* 139 Mich App 651; 362 NW2d 860 (1984), to support its proposition that proof of knowledge is not required. Its reliance is misplaced. There, the arrangement between the co-owners, a father and his daughter, was really a secured transaction.[13] The father loaned his daughter money to purchase the car. The daughter was the sole driver of the car. The forfeiture action arose because of her use of the car to make a delivery of marijuana. In the drug statute forfeiture provisions there is an exemption for innocent owners. The issue was whether the father's lack of knowledge exempted the vehicle from forfeiture. Instead, the panel focused on the daughter's knowledge and found it sufficient to support forfeiture. The panel did not address the effect of forfeiture on the father's interest. Additionally, *1979 Honda* did not arise under the nuisance abatement statute. Further, this case is factually distinguishable because Mr. and Mrs. Bennis owned the vehicle as joint owners —not as lender/borrower.

The lead opinion tries to distinguish *In re Forfeiture of $53,* 178 Mich App 480; 444 NW2d 182

---

[13] A father and a daughter were co-title owners of the car. However, the father did not live with his daughter, his address was not on the registration, the daughter had sole possession of the car, and she paid all the insurance premiums.

(1989), because it was based on statutory construction—not constitutional violation. There, the panel thoroughly considered the statutory "innocent owner" defense found in MCL 333.7521; MSA 14.15(7521). The panel examined federal and state law interpretations. The panel concluded:

> To summarize, we conclude that § 7521(1)(d)(ii) was intended to establish a separate defense for each claimant who has a personal interest in the property as an owner. Hence, where the prosecution commences an action against a conveyance that is used for unlawful narcotics activity, the forfeiture of the res is subject to the interest of a co-owner who proves that the proscribed act was done without his or her knowledge or consent, express or implied. *The state may only forfeit the ownership interest of the noninnocent owner.* If, for example, the innocent owner has a fifty percent interest in the vehicle, the property may be sold and the proceeds divided equally between the state and the innocent co-owner. [*Forfeiture of $53* at 495-496. Emphasis added.]

Even though this *Forfeiture of $53* arose under a different statute, I believe that it supports an approach that protects innocent co-owners.

In the case at bar, the lead opinion also cites *In re 1976 Blue Ford Pickup,* 120 Ariz 432; 586 P2d 993 (Ariz App, 1978). While it is true that the court upheld the forfeiture of the mother's joint interest in the truck, the court did so after focusing on the unique facts of the case.[14] Arguably, the case was the exception to the general rule. The vehicle was titled in the names of mother *or* son. Under Arizona law, such a title allows *either* joint owner to transfer complete ownership interest in

---

[14] The mother bought the car with her own money and originally titled the car in her name *and* her son's name. The son moved to Arizona, and the title was changed to mother *or* son. *Id.* at 433-434.

the vehicle without consent of the other.[15] Further, the son had exclusive possession of the vehicle in another state. Unfortunately for the mother, she could have preserved her interest had she been a secured creditor, rather than co-owner. *Id.* at 435.

Notwithstanding its determination of the outcome, the *Blue Ford Pickup* court cited with approval the general rule that innocent owners will not lose their interests:

> "[A]n automobile may *not* be forfeited . . . unless the owner has some connection with the unlawful act, or intended to permit the automobile to be used by a third person in the commission of the unlawful act, or had knowledge it was to be so used. This is in line with the trend of the more recent decisions of the United States Supreme Court in the protection of constitutional rights, both of person and property." [*Id.* at 434, quoting *In re One 1965 Ford Mustang,* 105 Ariz 293, 300; 463 P2d 827 (1970). Emphasis added.]

### III. CONCLUSION

I disagree with the conclusion of the lead opinion that the "condition" of the "neighborhood" is the public nuisance. I also disagree with the position of the lead opinion that a single act of prohibited conduct is sufficient to support abatement, without evidence that the conduct is habitual or continuing. Public nuisances, by their very nature, imply a continuing condition. The public nuisance abatement statute is aimed at property that has become so associated with an activity that it has become part of the activity. In the instant case, the vehicle was only a convenient site for the activity to occur. This situation is far different

---

[15] The statute requires consent to such transfers at the time joint owners obtain such a certificate of title.

from shutting down a building, i.e., a brothel or a crack house, that has become so associated with the illegal activity that it has become part of the activity. Here, the vehicle can be driven out of the "neighborhood" without becoming permanently tainted as a lewd or prostitution vehicle. Additionally, this situation is far different from shutting down a gambling operation that, as an *essential part of its operation,* uses the vehicles to transport betting slips and money.

In conclusion, I would hold that the activity that occurred in this vehicle is insufficient to subject it to abatement under the public nuisance abatement statute.

I would affirm the judgment of the Court of Appeals.

LEVIN and BRICKLEY, JJ., concurred with CAVANAGH, C.J.

LEVIN, J. (*dissenting*). The nuisance abatement statute, as originally enacted in 1915, declared that a "building or place" used for the purpose of prostitution was an abatable nuisance.[1]

Ten years later, during the Prohibition era, "building or place" was amended to add "vehicle," so that it read "building, *vehicle* or place." For the purpose of "prostitution" was changed to read for the purpose of "prostitution or gambling," and to include such a building, vehicle, or place "used by, or kept for the use of prostitutes or other disor-

---

[1] 1915 PA 272 reading in part as follows:

> Section 1. Whoever shall conduct, maintain, own or lease any building or place used for the purpose of lewdness, assignation or prostitution is guilty of a nuisance, and the building or place in or upon which such lewdness, assignation or prostitution is conducted, permitted or carried on, and the furniture, fixtures, and contents are also declared a nuisance, and shall be enjoined and abated as hereinafter provided.

derly persons," or used for the manufacture of, or trafficking in, intoxicating beverages.[2]

I

In the seventy years since the 1925 enactment adding the word "vehicle," there has been no prior reported prosecution of a person for the use of a vehicle for the purpose of prostitution. It thus appears that no automobile used by a man to visit a house of prostitution, or to visit a hotel or apartment house frequented by prostitutes, was abated as a nuisance.[3]

---

[2] 1925 PA 389 reading in part as follows:

> Section 1. Any building, vehicle or place used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons, or used for the unlawful manufacture, storing, possessing, transporting, sale, keeping for sale, giving away, bartering, furnishing or otherwise disposing of any vinous, malt, brewed, fermented, spirituous or intoxicating liquors or any mixed liquors or beverages, any part of which is intoxicating, is hereby declared a nuisance and the furniture, fixtures and contents of any such building, vehicle or place, and all such intoxicating liquors therein are also declared a nuisance, and all such nuisances shall be enjoined and abated as hereinafter provided. Any person, or his servant, agent or employe who shall own, lease, conduct or maintain any building, vehicle or place used for any of the purposes or by any of the persons above set forth or where any of the acts above enumerated are conducted, permitted or carried on, is guilty of a nuisance.

The foregoing statutory provision was amended by 1951 PA 80 to add "boat" and "aircraft" as property subject to abatement and forfeiture, and to add trafficking in "narcotic and/or hypnotic drugs" as illicit businesses.

1988 PA 2 substituted "controlled substance" for "narcotic and/or hypnotic drugs."

The current statute, MCL 600.3801; MSA 27A.3801, is set forth in the majority opinion, n 1.

[3] No taxicab, even a taxicab that had been waiting outside a bar frequented by prostitutes, was abated as a nuisance.

No automobile used by a prostitute who hailed men from the vehicle, or who used the vehicle to make a house call, was abated as a nuisance.

The statute has not heretofore been employed to abate the use of property by someone who was not himself engaged in the illicit activity as a business.[4]

I would hold that a vehicle is not subject to a nuisance abatement action unless the person owning or in lawful possession of the vehicle is engaged in and uses the vehicle in the conduct of illicit activity, described in the statute, as a business.

II

The lead opinion states: "Where testimony surrounding proof of an incident of prostitution unequivocally establishes that the neighborhood has a reputation for prostitution, the property contributing to the continuance of the nuisance may be abated pursuant to the statute."[5] The lead opinion concludes that "the act of prostitution occurring in the Bennis vehicle in a neighborhood known for prostitution" was an abatable nuisance.[6]

The lead opinion thus would hold that a vehicle used by a customer of a prostitute becomes an abatable nuisance when such use contributes to a preexisting prostitution nuisance in a neighborhood, and that a vehicle may be found to so contribute when it is driven to a neighborhood

I do not wish to be understood as saying that a taxicab so used, or an automobile so used by a prostitute, might not be subject to abatement.

[4] In the following cases, vehicles were found to be nuisances on evidence tending to show that they were used in gambling enterprises. See *People ex rel Wayne Prosecuting Attorney v Bitonti,* 306 Mich 115; 10 NW2d 329 (1943); *People ex rel Wayne Prosecuting Attorney v Tate,* 306 Mich 667; 11 NW2d 282 (1943); *People ex rel Wayne Prosecuting Attorney v Sill,* 310 Mich 570; 17 NW2d 756 (1945); *State ex rel Wayne Prosecuting Attorney v Martin,* 314 Mich 317; 22 NW2d 381 (1946).

[5] *Ante,* p 737.

[6] *Id.*

where prostitutes congregate and is used in the commission of an act of prostitution in such a neighborhood.

The lead opinion thus appears to recognize that ordinarily the occasional use by a person, not himself engaged in an illicit activity as a business, of his vehicle to participate in illicit conduct, was not intended by the Legislature to permit the declaration of the vehicle as an abatable nuisance even though the customer's conduct might be punishable as a criminal offense.

The reasoning of the lead opinion would mean that a customer's vehicle used for prostitution may be abated as a nuisance when driven to and so used on Eight Mile Road in Detroit, but not when so used in Northville or Charlevoix. Some prosecutors and judges may think that way, but legislators do not.

I suggest that compliance with the admonishment, quoted approvingly by the lead opinion, that "[w]e have no other duty to perform than to construe the legislative will as we find it,"[7] requires that we not attribute to the Legislature an intent to permit the seizure of a customer's vehicle, only occasionally used in illicit activity, when the customer is not himself engaged in the illicit activity as a business.

The Legislature may, of course, amend the statute to provide for the seizure of customer vehicles, but, if the Legislature does so, it will surely so provide without regard to the neighborhood in which the customer of a prostitute uses his vehicle, whether in Northville, Charlevoix, or Detroit.

III

Among the least persuasive arguments advanced

[7] *McKibbin v Corp & Securities Comm,* 369 Mich 69, 81; 119 NW2d 557 (1963), quoted approvingly, *ante,* p 739, n 30.

by the lead opinion is the contention that "place" means the neighborhood, and that it must be so construed to give meaning to all the words in the statute.[8] The word "place" was part of the original enactment, "building or place."[9] The Legislature had in mind that there might be a place that was not a building that might be used for prostitution that should be subject to an abatement action.

The general reputation of the place was admissible under the statute for the purpose of showing that the place is a nuisance.[10] An automobile was not such a place when this legislation was first enacted in 1915. Vehicles were not added until 1925, at which time the Legislature distinguished between the general reputation of a building, and of a vehicle, and of a place.[11] The general reputation of a place may be considered for the purpose of showing that the place is a nuisance, and of a vehicle for the purpose of showing that the vehicle is a nuisance.[12] But the general reputation of a place where the vehicle is driven or used may not, under the statutory provision for use of general reputation evidence, be relied on for the purpose of showing that the vehicle is a nuisance.

Unless a vehicle is itself a nuisance, it is not subject to abatement, and it is not within the intendment of the statute.

Unless a place is itself a nuisance, i.e., a place used for the purpose of prostitution, or used by or

---

[8] *Ante,* p 733.

[9] See n 1.

[10] 1915 PA 272, § 3.

[11] 1925 PA 389, § 9. See n 12.

[12] In any action brought under this chapter, evidence of the general reputation of the building, vehicle, boat, aircraft or place is admissible for the purpose of proving the existence of the nuisance. [MCL 600.3815(1); MSA 27A.3815(1).]

kept for the use of prostitutes, it is not subject to abatement, and it is not within the intendment of the statute. The Legislature clearly did not intend that an entire residential neighborhood where prostitutes roam was, as a place, subject to abatement.

IV

The reliance of the lead opinion on the statutory language stating that the prosecutor is not required to provide "[p]roof of knowledge of the existence of the nuisance on the part of the defendants or any of them,"[13] to justify its conclusion that an innocent owner's share of the property is subject to forfeiture, is misplaced. This statutory provision only relieves the prosecutor of the burden of showing such knowledge as part of his prima facie case that there is a nuisance subject to abatement.[14]

This statutory provision does not make an owner's lack of knowledge immaterial or irrelevant regarding whether property that is subject to abatement as a nuisance should be forfeited. As a matter of statutory construction, I would hold that an innocent co-owner's share of the vehicle is not subject to forfeiture. Such a construction is especially called for where the Court by construction today enlarges the application of the nuisance abatement statute beyond its letter and beyond any prior application in its seventy-year history.

---

[13] MCL 600.3815(2); MSA 27A.3815(2).

[14] See 2 McCormick, Evidence (4th ed), § 342, Presumptions in General, pp 449 ff; § 343, Reasons for the Creation of Presumptions: Illustrative Presumptions, pp 454 ff; § 344, The Effect of Presumptions in Civil Cases, pp 460 ff.

See also LaFave & Scott, Criminal Law (2d ed), § 213, Constitutional Limitations—Due Process and Statutory Presumptions, Defenses, and Exceptions, pp 158 ff.